UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

OILVER GIOLA WEST, JR.

                  Plaintiff,

-against-

GEORGE ALEXANDER, Chairman of
the New York State Division of Parole;
DAVID PATERSON, Governor of the State
of New York,

                  Defendants.

-----------------------------------------------------------------X

07-cv-2098 (ARR) (LB)

<u>NOT FOR PRINT
OR ELECTRONIC
PUBLICATION</u>

OPINION AND ORDER

ROSS, United States District Judge:

Plaintiff Oliver Giola West, *pro se,* brought this action pursuant to 42 U.S.C. § 1983, alleging that the defendants adopted a policy to deny parole to offenders without balancing the statutory factors set forth in N.Y. Exec. Law. § 259-i(2)(c)(A). Currently before this court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56(c). Defendants claim that the evidence in the record demonstrates that no unconstitutional policy exists, and that the Parole Board properly evaluated plaintiff's parole request using the required statutory factors. For the reasons set forth below, defendants' motion for summary judgment is granted.

## BACKGROUND

Plaintiff Oliver Giola West is a New York State prisoner serving a sentence of fifteen years to life pursuant to a 1984 conviction for rape and sodomy in the first degree. He has appeared before the parole board in 1998, 2000, 2002, 2004, 2006, and 2008, but has been

1

denied parole on each occasion.[1] Plaintiff alleges that the New York State Executive Department, Division of Parole, under the direction of former Governor Pataki and former Parole Chairman Robert Dennison, have adopted an unconstitutional policy of denying parole without considering the statutory factors under N.Y. Exec. Law. § 259-i.[2] (Compl. at IV.A.) Plaintiff additionally raises a challenge to the state's practice of counting prisoners as residents of the district in which they are imprisoned for purposes of apportioning the state's senate districts. (Id. at V.)

At plaintiff's July 10, 2006 hearing, the commissioners questioned plaintiff about the underlying crime for which he is presently incarcerated, plaintiff's ongoing appeal, his disciplinary record during incarceration, plaintiff's program participation, and his possible future sources of employment and support networks if he were to be released. Following the hearing, the commissioners denied plaintiff parole, stating that "there is a reasonable probability that [he] would not live and remain at liberty without again violating the law . . . ." (July 10, 2006 Parole Decision, Harben Decl., Ex. B at 9.) The Board stated that the decision was based on plaintiff's instant offenses, committed while on parole, and his thirty year history. (Id.) The Board also noted plaintiff's programming and clean disciplinary record. (Id.)

Following the April 29, 2008 parole hearing, the Board noted plaintiff's good institutional behavior, his re-entry plans, and his completion of many programs and letters of support, but decided that because of plaintiff's "history while on parole for a similar sexual offense and the nature of the instant offense . . . there is a probability that [he] would not live and

---

[1] Plaintiff was most recently denied parole following an April 29, 2008 Parole Board interview. See Harben Decl., Exs. I, M, N and O. Plaintiff filed his cause of action on May 8, 2007, and has not moved pursuant to Fed. R. Civ. P. 15(d) to amend his complaint to include his 2008 parole hearing in this cause of action. Plaintiff, however, has claimed that this hearing and the subsequent decision have also violated his due process rights. See Pet.'s Mem. at 2.
[2] Plaintiff's July 10, 2006 parole hearing was presided over by then Division of Parole Chairman Robert Dennison. George B. Alexander has since become the Chairman of the Division of Parole.

remain at liberty without reoffending." (April 29, 2008 Parole Decision, Harben Decl., Ex. M, at 15.)

On May 21, 2008, I granted, in part, defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), dismissing plaintiff's claims for money damages, all claims against the parole commissioner for acts performed in their quasi-adjudicative capacity, and plaintiff's claims under the equal protection and ex post facto clauses. (Order, Dkt. Entry 39.) To the extent plaintiff raised a vote dilution claim or challenge to New York's apportionment of its state senate districts, plaintiff's claim was dismissed for lack of standing. (Id.) Finally, plaintiff's claim that the New York state parole scheme is facially void for vagueness was also dismissed. (Id.)

Plaintiff's remaining claim is that his due process rights were violated when he was denied parole pursuant to an allegedly unconstitutional policy to deny parole to all inmates without considering any of the factors set forth in New York Executive Law § 259-i(2)(c)(A) in order to maintain prison populations in certain New York state senate districts. Plaintiff also claims that the Board acted in an arbitrary and capricious manner with respect to his repeated parole denials, simply using boilerplate language without analyzing the requisite factors.[3] Defendants have moved for summary judgment on the grounds that (a) plaintiff cannot assert a right to parole, (b) plaintiff has not met his burden of showing that any policy to systematically deny parole in inmates exists, and (c) the statutory factors were assessed when the Board denied parole to plaintiff. (Defs.' Mem. in Support of Mot. for Summary Judgment, at 3-5.)

---

[3] On September 17, 2009, plaintiff requested permission to file "partial summary judgment" with respect to his apportionment claims when he received the affidavits he required to substantiate the apportionment issue. Letter, 9/18/09, Dkt. Entry 88. As discussed below, this request was made following a discovery conference on July 14, 2009 where Magistrate Judge Bloom ordered discovery closed.

## STANDARD OF REVIEW

A moving party is entitled to summary judgment if, "upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir. 1993); see Fed. R. Civ. P. 56(c). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome of the litigation if application of the relevant substantive law requires their determination. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Cartrett, 477 U.S. 317, 323 (1986). The substantive law determines the facts that are material to the outcome of a particular litigation. See Anderson, 477 U.S. at 250; Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975). In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

If the moving party meets its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. Only when it is apparent that no rational finder of fact "could find in favor of the non-moving party because the

evidence to support its case is so slight" should summary judgment be granted. Gallo v. Prudential Residential Servs. Ltd. Partnership, 22 F.2d 1219, 1223 (2d Cir. 1994).

*Pro se* complaints are to be construed liberally during the summary judgment phase. Haines v. Kerner, 404 U.S. 519, 520 (1972). Courts must read a *pro se* litigant's supporting papers liberally, interpreting them "to raise the strongest arguments that they suggest." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996) (internal quotation marks omitted). This does not, however, "relieve [P]laintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted). "[P]roceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's bald assertion, unsupported by evidence, is not sufficient to overcome a motion for summary judgment." Monterroso v. Sullivan & Cromwell, LLP, 591 F.Supp.2d 567, 577 (S.D.N.Y. 2008) (internal quotations omitted).

## DISCUSSION

It is well established that an inmate does not have a constitutional right to parole. Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979); Barna v. Travis, 239 F.3d 169, 171 (2d Cir. 2001) (finding that the New York parole system does not create "in any prisoner a legitimate expectancy of release"); Mathie v. Dennison, 2007 WL 2351072, at *6 (S.D.N.Y. 2007). Under state law, however, the Parole Board's decision is not unlimited. New York law provides that "discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined." N.Y. Exec. Law § 259-i(2)(c)(A). Rather, the Board may grant parole after "considering if there is a reasonable

probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society." Id. To guide the Board in its decision, the statute outlines five factors that must be considered:

(i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates;

(ii) performance, if any, as a participant in a temporary release program;

(iii) release plans including community resources, employment, education and training and support services available to the inmate;

(iv) any deportation order issued by the federal government against the inmate while in the custody of the department of correctional services and any recommendation regarding deportation made by the commissioner of the department of correctional services pursuant to section one hundred forty-seven of the correction law; and

(v) any statement made to the board by the crime victim or the victim's representative, where the crime victim is deceased or is mentally or physically incapacitated.

See N.Y. Exec. Law § 259-i(2)(c)(A); 9 N.Y.C.R.R. § 8001.3. The statute does not, however, guide the Board regarding how much weight it should assign to each factor. See Farid v. Bouey, 554 F.Supp.2d 301, 321 (N.D.N.Y. 2008).

A. Plaintiff's Challenge to New York Executive Law § 259-i(2)(c)(A)

In his motion papers, plaintiff repeatedly challenges the validity of New York Executive Law § 259-i(2)(c)(A), alleging that the statute is vague and easily manipulated by parole commissioners, resulting in "unlimited power" and arbitrary and capricious enforcement. (Pl.'s Mem. at 40, 47, 50, 55.) To the extent plaintiff repeats the facial void-for-vagueness challenge asserted in his complaint, such a challenge was dismissed by this court pursuant to defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss. (Order, Dkt. Entry 39 at 6.) In dismissing plaintiff's

claim, I noted that because plaintiff has no due process liberty interest in parole under New York's scheme, plaintiff could assert only his own legal rights and interests, and not the rights and interests of third parties. See Barna, 239 F.3d at 171 (holding that "plaintiffs have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable"); Farrell v. Burke, 449 F.3d 470, 495 (2d Cir. 2006) (finding that courts "have looked with disfavor on facial vagueness challenges to statutes that do not implicate fundamental rights"). Accordingly, plaintiff cannot reassert his vagueness challenge to the statutory scheme at the summary judgment phase.

B. Plaintiff's Claim that the Board Adopted a Policy to Systematically Deny Parole to Offenders

Plaintiff first alleges that defendants "created, authorized, maintained, permitted, and enforced" a policy under which violent offenders were denied discretionary parole release. Compl. at 3, 4. Defendants deny that such a policy existed or currently exists. (Decl. of Denise O'Donnell, Ex. K. ¶ 4.) Plaintiff repeatedly cites Graziano v. Pataki, 2006 WL 2023082, at *8 (S.D.N.Y. 2006), in which Judge Brient held that "there exists a Constitutional right to have a parole decision made in accordance with the statute." Plaintiff, however, acknowledges that other courts in this circuit have declined to accept Graziano's reasoning, holding that there is no constitutional entitlement to have a process of decision making the comports with New York law. See, e.g., Schwartz v. Dennison, 518 F. Supp. 2d 560, 574 (S.D.N.Y. 2007) (concluding that a policy denying parole to sex offenders would not violate due process); Mathie, 2006 WL 2351072, at *7 n. 4 (noting that Graziano's reasoning was "unpersuasive"). Through his reliance on Graziano and claims that a policy to deny parole to violent offenders violates due process, plaintiff seems to claim that there *does* exist a constitutional right to have parole determinations

made in accordance with New York law, and that a policy systematically denying parole violates this constitutional right.

Assuming, for the purposes of this summary judgment motion only, that a Constitutional right to have a parole determination made in accordance with New York law exists, plaintiff's evidence is nevertheless insufficient to support an inference that such a policy exists. Plaintiff first cites to public statements and speeches made by former Governor Pataki regarding changes in sentencing and parole legislation. (Compl. ¶ 8.) Such statements, taken out of context, are insufficient to defeat defendants' motion for summary judgment. It is undisputed that during Governor Pataki's tenure as Governor, the New York State Legislature enacted legislation establishing determinate sentencing for repeat, violent offenders, as well as for certain first-time offenders.[4] However, public statements regarding these legislative reforms do not create an inference that a policy existed to deny parole to individuals sentenced under an indeterminate sentencing scheme in violation of existing statutory factors.

Plaintiff additionally quotes a passage from an April 2000 publication of the Coalition for Parole Restoration, which quotes Martin Cirincione, former Executive Director of the New York State Division of Parole, as stating that an "informal policy" existed to deny parole to individuals following the first parole hearing. (Pl.'s Mem. at 41.) This statement, even if properly attributed and quoted, would constitute inadmissible hearsay and therefore cannot sustain plaintiff's burden of demonstrating the defendants created a policy under which unconstitutional practices occurred. See Fed. R. Civ. P. 56(e); Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004); Holmes v. Gaynor, 313 F. Supp. 2d 345, 358 n.1 (S.D.N.Y. 2004) (noting that a newspaper article is "hearsay and inadmissible for proving the truth of the matters asserted").

---

[4] See Sentencing Reform Act of 1995 (L.1995, ch. 3) (establishing determinate sentences for all repeat, violent felony offenders); Sentencing Reform Act of 1998 ("Jenna's Law") (abolishing indeterminate sentencing and replacing it with determinate sentencing for many first-time felony offenders).

Plaintiff further points to a memorandum issued by former Board of Parole Chairman Alexander dated April 16, 2007 in which he reiterated to the Board of Parole members the statutory criteria the Board must follow in making parole determinations. (Pl.'s Mem. at 53-54.) Plaintiff seems to allege that this memo serves as an admission that prior to its issuance, Board members were not using the requisite criteria in making parole decisions. Such a conclusory allegation, without more, cannot serve to show the existence of a genuine issue of material fact fit for trial.

Finally, plaintiff provides declarations of other individuals presently incarcerated who have been denied parole by the Board on several occasions. (Decl. of Lee Higgs; Decl. of Roosevelt Rosser; Decl. of Anthony Wynn.) Such declarations are similarly insufficient to overcome defendants' motion. Plaintiff has not alleged that the declarants have personal knowledge about such a policy, nor can the fact that they too have been denied parole raise an inference that an impermissible policy exists.

Accordingly, defendant's motion for summary judgment is granted with respect to plaintiff's claim that a policy exists to systematically deny parole to violent offenders.

C. Plaintiff's Apportionment Claim

Plaintiff also alleges that the Parole Board has adopted a policy to deny parole to violent offenders in order to maintain prison populations in certain New York senatorial districts that would not exist but for inmates. (Compl. ¶ 10.) Defendants claim that no such policy exists. (Decl. of Denise O'Donnell, Ex. K ¶ 6; Decl. of Terrence Tracy, Ex. L ¶ 4.) Defendants further claim that such a policy would not be pursued under the current administration, given that a Democratic administration would not little motivation to maintain Republican State Senate districts in the manner alleged. (Defs.' Mem. at 5.) Because plaintiff's evidence is insufficient to

support an inference that such a policy exists, defendants' motion for summary judgment is granted.

Plaintiff cites to newspaper articles and editorials regarding the practice and policy of counting inmates as the residents of the district in which they are incarcerated rather than the district to which they plan to return. (Compl. ¶ 10(e); Pl.'s Letter, September 17, 2009, Dkt. Entry 88 (citing Anthony Thompson, Democracy Behind Bars, N.Y. Times, Aug. 5, 2009).) These articles show only that inmates are, in fact, counted in the districts in which they are incarcerated, that, in fact, without such a practice, some state senate districts would face uncertain futures, and that individuals are advocating for changes in census policy. Though plaintiff has succeeded in showing that inmates are currently counted for census purposes in such a manner, plaintiff has failed to make the connection between this policy and the denial of his parole by the Parole Board. When asked about how such a policy would apply to him, now a "resident" of Richmond County, plaintiff responded, "[a]ll I know there is a possibility that it is and possibility that it is not." (Dep. of Pl. at 63.)

Plaintiff has sought permission to "file for partial summary judgment" when he receives additional affidavits on this issue, but he made the request following the July 14, 2009 closure of discovery. (Pl.'s Letter, September 17, 2009, Dkt. Entry 88.) Additionally, there is no evidence that the affidavits plaintiff seeks would do any more than show that individuals are advocating to change the policy of counting inmates as residents of the district in which they are incarcerated. (Id. (stating that "I am getting in touch with the National Research Council who had issued a report commissioned by the United States Census Bureau finding that counting prisoners as residents of the prisons . . . where they were housed distorted the political process . . . ").)

Because plaintiff has failed to make a connection between the existing method of counting inmates as residents of the districts in which they are incarcerated and his denial of parole, defendants' motion for summary judgment regarding this claim is granted.

D. <u>Plaintiff's Claim that the Board Acted in an Arbitrary and Capricious Manner in Denying Him Parole</u>

In addition to alleging an unconstitutional policy of denying parole to violent offenders, plaintiff contends that in his individual case, the Parole Board did not balance the statutory factors that are supposed to guide the Board's decision, and instead used boilerplate language to deny him parole in predetermined, arbitrary and capricious application of the statute. (Compl. ¶ 23(b)(vi); Pl.'s Mem. at 48, 60, 63.) Additionally, plaintiff claims that the Board relied solely on the nature of his underlying crime and the fact that it was committed while on parole, resulting in an arbitrary and capricious denial of parole given that such factors will never change. (Pl.'s Mem. at 67.) Defendant's argue that the record reveals that the Parole Board analyzed the necessary factors during plaintiff's relevant parole hearings and in making their decisions, and "reasonably determined that plaintiff may pose a risk to society if released." (Defs.' Mem. at 6.)

New York's discretionary parole system does not create a legitimate expectancy of release that gives rise to a due process right. See Barna, 239 F.3d at 171; Standley v. Dennison, 2007 WL 2406909, at *9 (N.D.N.Y. 2007). Even though plaintiff has no liberty interest in parole, the Parole Board may not deny plaintiff's application for parole for arbitrary or impermissible reasons. Brown v. Thomas, 2003 WL 941940, at *1 (S.D.N.Y. 2003) (internal citations omitted); see also Farid, 554 F.Supp.2d at 321; Mathie, 2007 WL 2351072, at *6. An inmate's due process rights are violated when the Parole Board denies "release arbitrarily or capriciously, based on inappropriate consideration of a protected classification or an irrational

distinction, or on any other unconstitutional grounds." Morel v. Thomas, 2003 WL 21488017, at *4 (S.D.N.Y. 2003).

However "boilerplate" their decisions were, the record shows that the Parole Board did consider these factors when it decided to deny plaintiff parole in 2006 and 2008. At the July 2006 hearing, the Board first noted that plaintiff did not wish to comment on the underlying offense because of plaintiff's ongoing appeal. (July 10, 2006 Parole Hearing Tr., Harben Decl., Ex. B, at 5.) After discussing the underlying offense, the Board questioned plaintiff regarding his programming, including legal assistance and grants for justice programs, his positions held while incarcerated, his association with a Quaker group that would provide assistance if released, and his musical developments. (Id. at 6-7.) In the written decision, the Board noted plaintiff's programming and clean disciplinary record, but determined that there was a "reasonable probability that you would not live and remain at liberty without again violating the law." The Board relied on the instant offense, the fact that this offense was committed while on parole, and plaintiff's 1974 sex offense. (July 10, 2006 Parole Board Decision, Harben Decl., Ex. B, at 9.)

At the April 29, 2008 parole hearing, plaintiff expressed that he could not change his past conduct, but that his record shows he is a different person. (April 29, 2008 Parole Hearing Tr., Harben Decl., Ex. M, at 4.) Plaintiff also discussed his ongoing appeal, the present case, and letters of support he received from members of the community. (Id. at 9-12.) In its decision denying parole, the Board found that "release at this time would so deprecate the seriousness of your instant offense as to undermine respect for the law," and that "there is a reasonable probability that, if released, you will not live and remain at liberty without violating the law." (April 29, 2008 Parole Board Decision, Harben Decl., Ex. M, at 14.) The Board specifically stated that "[t]his panel has considered all statutory factors, including your institutional record,

program completions and participations, vocational training and hours of work, along with your disciplinary record," in addition to "your release plan . . . ." (Id.) The Board noted plaintiff's "good institutional behavior, your re-entry plans, your completion of many programs and your letters of support," but decided that because of plaintiff's "history while on parole for a similar sexual offense and the nature of the instant offense . . . there is a probability that you would not live and remain at liberty without reoffending." (Id. at 15.)

Plaintiff challenges the consistent reliance on the underlying nature of the crime and fact that it was committed on parole, noting that these are circumstances he cannot change. The record does demonstrate that the Board considered the statutory factors, including his disciplinary record and participation in programs, but decided that these factors were outweighed by the serious nature of his crime. Despite plaintiff's protestations to the contrary, the "Board was entitled to determine that the nature of the crime outweighed the positive aspects of his record." Morel, 2003 WL 21488017, at *5. "Where a Board has properly considered statutory guidelines, it may . . . deny parole where it determines upon fair consideration of all relevant statutory factors that the nature and severity of the underlying crime outweigh other possibly positive factors." Graziano, 2007 WL 2023082, at *8. Additionally, the "Board has discretion to accord these considerations whatever weight it deems appropriate, and need not expressly discuss each of the reasons in its determination." Manley v. Thomas, 255 F. Supp. 2d 263, 267 (S.D.N.Y. 2003) (citing Garcia v. N.Y.S. Div. of Parole, 657 N.Y.S.2d 415, 418 (App. Div. 1st Dep't 1997)). As defendants point out, the fact that plaintiff remains incarcerated beyond his minimum sentence, standing alone, is not unlawful.

While I understand that plaintiff disagrees with the Board's consistent emphasis on his underlying crime, I cannot agree that the Board's decision was either arbitrary or impermissible,

or contrary to New York law, which does not specify how to weigh the statutory factors. The record demonstrates that the Board took into account the statutory factors and made a reasoned decision based on the underlying nature of plaintiff's crime for which he was given an indeterminate sentence. Because plaintiff has failed to provide evidence sufficient to give rise to an inference of a due process violation, defendants' motion for summary judgment on this claim is granted.

## CONCLUSION

For the reasons explained above, defendants' motion for summary judgment is granted, and the case is dismissed. The Clerk of the Court is directed to enter judgment accordingly. SO ORDERED.

/Signed by Judge Ross/
Allyne R. Ross
United States District Judge

Dated: December 28, 2009
Brooklyn, New York

Service List

**Plaintiff (pro se):**

Oliver Giola West, Jr.
84-A-5485
Arthur Kill Corr. Fac.
2911 Arthur Kill Road
Staten Island, NY 10309

**Attorney for Defendants**

Jeb Harben
State of New York
Office of the Attorney General
120 Broadway
New York, NY 10271

cc:   Magistrate Judge Bloom